## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED CAPITAL FUNDING GROUP, LLC,
a wholly owned subsidiary of GULF COAST
BANK & TRUST COMPANY,

                                     Civil Action No.

        Plaintiff,

v.

BRICK CITY BREWING, LLC,
STEPHEN HUGHES, individually, and
EG MUNOZ CONSTRUCTION LLC
D/B/A EGM BUILDERS, LLC, a nominal
Party,

        Defendants.

_____/

### COMPLAINT

United Capital Funding Group, LLC, a Louisiana limited liability company, a wholly

owned subsidiary of Gulf Coast Bank and Trust Company ("United Capital"), by and through the

undersigned counsel, hereby files this Complaint and sues Defendants Brick City Brewing, LLC

("Brick City"), a New Jersey limited liability company and Stephen Hughes, individually

("Hughes"), and nominal party[1] EG Munoz Construction LLC d/b/a EGM Builders, LLC ("EG

Munoz"), a New Jersey limited liability company, and in support thereof states:

---

[1] EG Munoz Construction LLC d/b/a EGM Builders, LLC is being named as a party in this action solely for the sole
purpose of providing notice of the commencement of this action.

## PARTY ALLEGATIONS

1.      United Capital is a Louisiana limited liability company, a wholly owned subsidiary of Gulf Coast Bank and Trust Company ("United Capital"), with its principal place of business located in Florida.

2.      Brick City, is a New Jersey limited liability company, with its principal place of business in New Jersey.

3.      Hughes is an individual over the age of 18 years and is *sui juris*.

4.      EG Munoz, is a New Jersey limited liability company, with its principal place of business in New Jersey.

## ALLEGATIONS APPLICABLE TO JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over the claims in this matter, pursuant to 28 U.S.C. § 1332(a). United Capital is a citizen of the State of Louisiana due to it having been formed as a Louisiana limited liability company, having its principal place of business in Florida. United Capital's sole member is Gulf Coast Bank & Trust Company, a Louisiana corporation, having its principal place of business in Louisiana.

6.      Brick City is a citizen of the State of New Jersey due to it having been formed as a New Jersey limited liability company and having its principal place of business in New Jersey. Upon information and belief, Brick City's member(s) is not a citizen of the State of Louisiana.

7.      Hughes is a citizen of the State of New Jersey.

8.      EG Munoz, is a citizen of the New Jersey due to it having been formed as a New Jersey limited liability company, having its principal place of business in New Jersey.  EG Munoz's member(s) is not a citizen of the State of Louisiana.

2

9.      The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a).

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all claims that are so related to the claims in the action within its original jurisdiction that they form part of the same case or controversy.

11.     Venue is proper in this Court pursuant to either 28 U.S.C. § 1391(b)(1) in that this action is filed in a judicial district in which the defendant resides, and/or § 1391(b)(2) in that this action is filed in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated.

## ALLEGATIONS APPLICABLE TO CONDITIONS PRECEDENT

12.     All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## ALLEGATIONS COMMON TO ALL COUNTS

### A.  The Parties; and the Factoring Relationship between United Capital and EG Munoz.

13.     United Capital is in the factoring business, which business involves, *inter alia*, the purchasing of accounts ("**Accounts**")[2] from businesses ("**Factoring Clients**") with whom it has formed a contractual relationship, the terms of which are generally wholly or partially contained in invoices. Within the factoring industry, the entity that purchases Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case United Capital. The entity from whom the Accounts are purchased is commonly referred to as the "Factoring Client" or "Seller," in this

---

[2] The term 'Accounts' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New Jersey's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered." N.J. Stat. § 12A:9-102 (a)(2).

3

case EG Munoz. The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor,"[3] in this case Brick City.

14.     On or about November 13, 2019, EG Munoz entered into a written agreement with United Capital titled "Factoring and Security Agreement" (the "**Factoring Agreement**"). A true and correct copy of the Factoring Agreement, but for any terms or provisions which are deemed confidential, and which have accordingly been removed or redacted, is attached hereto as **Exhibit A**.

15.     Pursuant to the Factoring Agreement, EG Munoz contractually offered to sell  to United Capital Accounts arising from EG Munoz's sale of goods or services performed (i.e., the **Construction Services** as more specifically identified below) provided to its customers, including Brick City. *See* **Exhibit A**, § 2.

16.     EG Munoz is a construction company that provides general contracting and subcontracting services and construction work, including renovations and building alterations for customers.

17.     Brick City contracted with EG Munoz to obtain from EG Munoz general contracting construction services, supplies and/or labor ("**Construction Services**") for a project named or referred to as Newark Local Beer located at 50 Broad Street Newark, New Jersey 07012 assigned Project No. EGM19-0122 (the "**Project**").

18.     United Capital, in connection with the Factoring Agreement, purchased Accounts from EG Munoz that it elected to purchase in connection therewith, including all of EG Munoz's

---

[3] The term 'Account Debtor' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New Jersey's version of the UCC and the term means "a person obligated on an account." N.J. Stat. § 12A:9-102 (a)(3).

rights, title to and interest in and in respect to all Accounts purchased, including the right to receive payment from Brick City (the "**Purchased Accounts**"), and in exchange, United Capital made purchase price payments to EG Munoz.

19.     In addition, in order to secure all of EG Munoz's Obligations[4] owing to United Capital under the Factoring Agreement, EG Munoz granted to United Capital a first priority security interest in various assets of EG Munoz identified in the Factoring Agreement as collateral, which collateral included, among other things, all of EG Munoz's Accounts, together with other assets and all Proceeds[5] thereof (collectively, the "**Collateral**"). *See* **Exhibit A**, §§ 1.13.

20.     United Capital's security interest attached to the collateral pursuant to and in accordance with uniform Commercial Code Section 9-203.

21.     On October 25, 2017, United Capital duly perfected its first priority ownership interest in the Purchased Accounts and its first priority security interest in all Collateral, including all Accounts, by causing the filing of a UCC-1 Financing Statement to be filed with the State of New Jersey Department of the Treasury, Division of Revenue & Enterprise Services UCC Section,[6] which was assigned filing number 52473021. A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit B**.

---

[4] The term "Obligations" is defined in Section 1.41 of the Factoring Agreement and means, *inter alia*, "all present and future obligations owing by EG Munoz to United Capital..."

[5] The term 'proceeds' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New Jersey's version of the UCC, and the term means "except as used in Section 9-609(b), means the following property: (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; (B) whatever is collected on, or distributed on account of, collateral; (C) rights arising out of collateral; (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral." N.J. Stat. § 12A:9-102 (a)(64).

[6] The UCC requires a UCC Financing Statement to be recorded in the state in which the registered organization is formed. *See* UCC §§ 9-307, 9-501. Since EG Munoz is a corporation organized under the laws of the State of New Jersey, New Jersey is the proper jurisdiction for perfection filing. The UCC, as adopted in New Jersey, requires the

22.     Until all of the Obligations under the Factoring Agreement have been paid in full,

**whether or not EG Munoz is in default under the Factoring Agreement**, EG Munoz expressly

and irrevocably granted a power of attorney to United Capital to exercise the authority to do each

of the following:

> 10.1.1 Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser [United Capital] or Seller [EG Munoz], proceeds of any Collateral;
>
> 10.1.2 Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon Purchaser's Accounts;
>
>        *       *       *
>
> 10.4 In coordination with Seller, notify any Payor [here, Brick City] obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser;
>
> 10.5 In coordination with Seller, communicate directly with Seller's Payors [here, Brick City] to verify the amount and validity of any Account created by Seller.

23.     In addition to the rights and powers granted to United Capital in section 10.1

through 10.5 in the Factoring Agreement, after an Event of Default, United Capital is also

authorized to do each of the following:

> 10.6.2.1 In its own name or on behalf of Seller, extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions (collectively, a "Settlement"), any and all Accounts and discharge or release any Account Debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such Account Debtor), without affecting any of the Obligations;
>
>        *       *       *
>
> 10.10 Perform Accounts collection services on Seller's behalf, which services may include, but are not limited to, (1) communicating with Account Debtors, (2) reviewing public records and credit reports, and (3) the bringing (in Purchaser's or Seller's name at Seller's sole expense), actions deemed appropriate by Purchaser to

---

filing of a UCC Financing Statement to be done in "The Division of Commercial Recording or other office designated by Executive Order." N.J. Stat. § 12A:9-501(B)(2). Pursuant to N.J. Admin. Code § 17:33-2.1 "UCC filings relating to all types of collateral shall be submitted to the DORES, except when the collateral is timber to be cut, as-extracted collateral, or when the filing relates to fixtures or goods that are or are to become fixtures. Regardless of the nature of the collateral, where the debtor is a transmitting utility, the place for filing is the DORES."

effect collection of Seller's Accounts ("Collection Services"). Upon such request, or immediately after the occurrence of an Event of Default, Seller shall be deemed to have authorized Purchaser to perform Collection Services.

24.     As owner of the Purchased Accounts and in respect to those non-Purchased Accounts in which United Capital holds a duly perfected first priority security interest, United Capital was contractually entitled to exercise total dominion and control over all amounts paid as proceeds of the Purchased Accounts and non-Purchased Accounts.

25.     Pursuant to the Factoring Agreement, EG Munoz, *inter alia*, covenanted to United Capital that "[b]efore sending any Invoice to an Account Debtor, Seller shall mark same with such notice of assignment as Purchaser may require."

26.     The Factoring Agreement establishes United Capital's right to dominion and control over all payment made and/or proceeds received by EG Munoz on account of any Purchased Accounts, and after an event of default, any non-Purchased Accounts.

27.     Section 12.7 in the Factoring Agreement reads as follows:

Seller [EG Munoz] shall pay to Purchaser [United Capital] <u>on the next banking day</u> following the date of receipt by Seller [EG Munoz] the amount of:

12.7.1 Any payment on account of a Purchased Account.

12.7.2 After the occurrence of an Event of Default, any payment on account of <u>any</u> Account. (i.e., all non-Purchased Accounts).

(underlining added).

28.     Moreover, prior to an event of default, an express trust relationship was established which required EG Munoz, as settlor and trustee, to place all proceeds of Accounts received by EG Munoz "in trust for Purchaser [United Capital]" as the sole beneficiary, none of which proceeds were to "be commingled with any funds of" EG Munoz. *See* **Exhibit A**, §§ 12.8.

**B. The Construction Agreement between Brick City and EG Munoz in Respect to Which EG Munoz provided Construction Services and issued Invoices to Brick City, the**

**Right to Receive Payment of Which Invoices is Assigned and Payable to United Capital by Brick City.**

29.     EG Munoz (as contractor) and Brick City (as owner) entered into a Construction Agreement (the "**Brick City Agreement**"), under which Brick City contracted EG Munoz to provide the general contracting Construction Services for the Project.

30.     EG Munoz performed Construction Services for Brick City in accordance with the Brick City Agreement.

31.     In connection with each Purchased Account offered for sale to United Capital by EG Munoz, which arose from the Construction Services provided to Brick City by EG Munoz, EG Munoz was required to submit to United Capital the following documentation:

a.  A Schedule(s) of Accounts completed by EG Munoz, containing certain information in respect to invoices EG Munoz offered for sale to United Capital (the "**Schedule of Accounts**"),

b.  A Sworn Statement executed by EG Munoz's principal, Mr. Michael Espinosa, requiring EG Munoz to disclose information in respect to any subcontractors and service providers  that EG Munoz contracted to provide, and provided materials or labor for the Project, the amounts due by EG Munoz and the amount paid by EG Munoz,

c.  An Invoice issued by EG Munoz to Brick City,

d.  A Document Summary Sheet executed by EG Munoz's principal, Mr. Michael Espinosa, detailing EG Munoz's application for payment of amounts due from Brick City for Construction Services provided by EG Munoz, and

e.  Document Detail Sheet describing the work performed by EG Munoz in connection with the invoice issued to Brick City for payment.

8

(the "**Invoice Documentation**").

32.     In accordance with the Factoring Agreement, EG Munoz offered for sale and United Capital purchased the following Purchased Accounts which remain unpaid by Brick City to United Capital, as evidenced by Invoice Documentation issued to Brick City for the Construction Services provided by EG Munoz to Brick City:

| Invoice Number | Invoice Amount | Invoice Date |
|---|---|---|
| 19-0122-004 | $105,865.83 | 9/23/2020 |
| 19-0122-005 | $78,256.75 | 9/26/2020 |
| 19-0122-006 | $55,836.45 | 10/13/2020 |
| | Total Invoice Amount Due: | $239,959.03 |

(the "**Matured and Unpaid Invoices**"). The Invoice Documentation related to the Matured and Unpaid Invoices 19-0122-004 and 19-0122-006 is attached hereto as **Exhibit C** and **Exhibit D,** respectively[7].

33.     In accordance with the Factoring Agreement and as authorized by section 9-406 of the Uniform Commercial Code, each invoice issued by EG Munoz to the account debtor, Brick City, contained language that satisfied the requirements of 9-406 notifying Brick City that the Matured and Unpaid Invoices assigned to United Capital and are assigned and payable solely and exclusively to United Capital.

34.     The terms of sale of Construction Services between EG Munoz and Brick City provide that payments will be due upon Brick City's receipt of an invoice issued by EG Munoz.

35.     Each of the Matured and Unpaid Invoices have matured.

---

[7] United Capital has searched its factoring software system and is currently unable to locate the Invoice Documentation related to 19-0122-005, which is the reason that the Invoice Documentation related to 19-0122-005 is not being attached to the Complaint. United Capital believes that EG Munoz and/or Brick City will each have in their possession a copy of the invoice numbered 19-0122-005 issued to Brick City by EG Munoz for payment to United Capital.

36.     United Capital has not received payments of any of the sums due on the Matured and Unpaid Invoices.

37.     Article 9 of the Uniform Commercial Code, §9-406(a), as adopted in New Jersey as N.J.S.A. 12A:9-406, states as follows:

**§ 9.406. Discharge of Account Debtor; Notification of Assignment; Identification and Proof of Assignment; Restrictions on Assignment of Accounts, Chattel Paper, Payment Intangibles, and Promissory Notes Ineffective**

(a)...an account debtor [here, Brick City] on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor [here, EG Munoz] until, but not after, the account debtor [here, Brick City] receives a notification, authenticated by the assignor [here, EG Munoz] or the assignee [here, United Capital], that the amount due or to become due has been assigned and that payment is to be made to the assignee [here, United Capital]. After receipt of the notification, the account debtor [here, Brick City] may discharge its obligation by paying the assignee [here, United Capital] and may not discharge the obligation by paying the assignor [here, EG Munoz].

38.     Due to Brick City's receipt of the assigned Matured and Unpaid Invoices, and in accordance with UCC § 9-406, and applicable common law, Brick City could only discharge its obligation on the Matured and Unpaid Invoices by remitting the payment due to United Capital.

39.     However, after Brick City's receipt of the Matured and Unpaid Invoices, instead of remitting payment to United Capital, Brick City paid the assignor, EG Munoz, among other persons ("**Misdirected Payments**"), and as a result, any payments made by Brick City failed to discharge its obligation on the Matured and Unpaid Invoices, or any other amounts that were owing by Brick City in regard to the Construction Services provided to Vitaquest by EG Munoz.

40.     United Capital issued one or more communications to Brick City requesting that Brick City remit payment to United Capital for all sums due on the Matured and Unpaid Invoices as reflected in the Invoice Documentation.

41.     However, despite United Capital's demand, Brick City has failed and/or refused to pay United Capital the amounts owing for the Construction Services as reflected in the Matured and Unpaid Invoices.

## COUNT I
**Breach of Obligation to Pay Sums Due on Accounts Assigned to United Capital, as Assignee of the Right to Receive Payment, and Non-Dischargeability of any Misdirected Payments Wrongfully Paid by Brick City on the Matured an Unpaid Invoices and all other Amounts Due from Brick City on Open and Unpaid Outstanding Accounts**

United Capital, as the assignee of the right to receive payment, sues Brick City for Breach of Obligation to Pay Sums Due on Accounts Assigned to United Capital as assignee of the Right to Receive Payment and Non-dischargeability of any Misdirected Payments Wrongfully Paid by Brick City on the Matured and Unpaid Invoices and All Other Amounts Due from Brick City on Open Unpaid and Outstanding Accounts that United Capital may be unaware of, as grounds therefore states as follows:

42.     United Capital realleges and readopts paragraphs 1 through 40 above as if fully realleged herein.

43.     Pursuant to 9-607 of the UCC, adopted in New Jersey as N.J. Stat. Ann. § 12A:9-607, United Capital, as assignee of the right to receive payment is entitled to stand in the shoes of EG Munoz in order to collect Brick City's obligations, as the account debtor under the Brick City Agreement.

44.     N.J. Stat. Ann. § 12A:9-607, states, in relevant part:

(a) Collection and enforcement generally. **If so agreed, and in any event after default, a secured party** [here, United Capital]:

> (1) may notify an account debtor [here, Brick City] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, United Capital];

(2) may take any proceeds to which the secured party [here, United Capital] is entitled under 12A:9–315;

(3) **may enforce the obligations of an account debtor [here, United Capital] or other person obligated on collateral and exercise the rights of the debtor [here, EG Munoz] with respect to the obligation of the account debtor [here, Brick City] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, EG Munoz],** and with respect to any property that secures the obligation of the account debtor [here, Brick City] or other person obligated on the collateral…

(bolding supplied).

45.     In accordance with the Brick City Agreement between Brick City and EG Munoz, EG Munoz materially and substantially fulfilled the Construction Services to Brick City, and in connection therewith, Brick City became obligated on all Accounts arising under the Brick City Agreement including, the Matured and Unpaid Invoices, that arose and were issued to Brick City by EG Munoz for payment for the Construction Services.

46.     Brick City received the Matured and Unpaid Invoices.

47.     On September 23, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

48.     On or about September 26, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

49.     On October 14, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

50.    Hughes on the face of each of the Matured and Unpaid Invoices and based on the language contained therein executed, acknowledged, represented and confirmed to United Capital each of the following with respect to each Matured and Unpaid Invoices:

> All service that is being billed for is completed, correct and the amount due is approved for payment in full by 540 Brick City Brewing, LLC. I also confirm that there are no disputes, claims of offset or any other matters that reduce our obligation to pay the full amount of the invoice to United Capital Funding Group, LLC. Assigned and Payable to:
>
> United Capital Funding Group LLC PO Box 31246
> Tampa, FL 33631-3246

(the "**Brick City Agreement not to Assert Defenses**").

51.    Under common law, the Brick City Agreement not to Assert Defenses constitutes a clear, unequivocal waiver by Brick City of any right to remit payment of the Matured and Unpaid Invoices to any person except for United Capital.

52.    Moreover, as a result of the Brick City Agreement not to Assert Defenses Brick City is estopped from asserting any defenses to payment of the Matured and Unpaid Invoices.

53.    Brick City intentionally made the representations contained in the Brick City Agreement not to Assert Defenses to United Capital.

54.    The Brick City Agreement not to Assert Defenses induced reliance by United Capital, and as a result United Capital acted, or changed its position to United Capital's detriment by having decided to purchase from EG Munoz the Matured and Unpaid Invoices and United Capital made purchase price advances to EG Munoz under the Factoring Agreement.

55.    After Brick City received the Matured and Unpaid Invoices and executed the Brick City Agreement not to Assert Defenses, Brick City remitted one or more payments on the Matured and Unpaid Invoices to, among other persons, EG Munoz instead of paying United Capital.

56.     Pursuant to New Jersey's version of UCC § 9-406(a) and § 9-607, and applicable common law, Brick City could only discharge its obligation on the Matured and Unpaid Invoices by paying United Capital, and payment to EG Munoz, or other person other than United Capital was ineffective to discharge the obligation as well as a material breach of the Brick City Agreement not to Assert Defenses.

57.     Brick City is and remains liable to United Capital for all sums due on the Matured and Unpaid Invoices, and any unpaid and outstanding Accounts, or any other Account that during the discovery period United Capital learns that Brick City paid directly to EG Munoz in connection with EG Munoz's performance of the Construction Services under the Brick City Agreement.

58.     United Capital has suffered damages as a result of Brick City's failure to timely pay United Capital all sums due on the Matured and Unpaid Invoices.

59.     Brick City owes United Capital the sum of not less than $239,959.03 on the Matured and Unpaid Invoices together with any other invoices issued by EG Munoz to Brick City on or after the date of delivery of the assignments to Brick City, for which payment was not made to United Capital, and that may be discovered through discovery in this case, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE,** Plaintiff United Capital Funding, LLC demands judgment against Defendant Brick City Brewing, LLC in the amount of at least $239,959.03, plus any other amounts owing to EG Munoz, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

## COUNT II
## Account Stated and Non-Dischargeability
## of any Misdirected Payments on Accounts Wrongfully Paid to EG Munoz

United Capital, as the assignee of the right to receive payment, sues Brick City for Account Stated and non-dichargeability of Misdirected Payments on Accounts wrongfully paid to EG Munoz as grounds therefore states as follows:

60.     United Capital realleges and readopts paragraphs 1 through 40 and 47 through 49, above as if fully realleged herein.

61.     Brick City requested that EG Munoz provide it with the Construction Services on an open account that gave rise to indebtedness owed to EG Munoz as evidenced by the Matured and Unpaid Invoices.

62.     Pursuant to the Brick City Agreement, Brick City and EG Munoz entered into an express agreement that fixed the amount due, as evidenced by the Matured and Unpaid Invoices, in connection with Construction Services which amounts were assigned to United Capital, as the assignee of EG Munoz's right to receive payment for the Construction Services that EG Munoz provided to Brick City.

63.     On September 23, 2020, there was a striking of the balance due pertaining to the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, and pertaining to the Brick City Agreement not to Assert Defenses an admission of the correctness and/or assent to pay the balance due on the Matured and Unpaid Invoice numbered 19-0122-004 and the failure to pay United Capital in whole, or in part, the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020.

64.     On September 26, 2020, there was a striking of the balance due pertaining to the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, and pertaining to the Brick City Agreement not to Assert Defenses an admission of the correctness and/or assent to pay the balance due on the Matured and Unpaid Invoice numbered 19-0122-005 and the failure to pay United Capital in whole, or in part, the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020.

65.     On October 14, 2020, there was a striking of the balance due pertaining to the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, and pertaining to the Brick City Agreement not to Assert Defenses an admission of the correctness and/or assent to pay the balance due on the Matured and Unpaid Invoice numbered 19-0122-006 and the failure to pay United Capital in whole, or in part, the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020.

66.     Brick City owes United Capital the sum of $239,959.03, plus prejudgment interest on the account stated as evidenced by the Matured and Unpaid Invoices.

**WHEREFORE,** Plaintiff United Capital Funding Group, LLC demands judgment against Defendant Brick City Brewing, LLC in the amount of $239,959.03, plus any other amounts owing due to EG Munoz's provision of Construction Services and for which an account stated arose, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

16

## COUNT III
### Breach of Brick City's Agreement not to Assert Defenses
### Against United Capital Enforceable Under Common Law

As authorized by Fed. R. Civ. P. 8(d)(2), in the alternative United Capital, as the assignee of the right to receive payment, sues Brick City under New Jersey common law of contracts for Breach of the Brick City Agreement not to Assert Defenses Against United Capital, and as grounds therefore states as follows:

67.     United Capital realleges and readopts paragraphs 1 through 40 above as if fully realleged herein.

68.     On September 23, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

69.     On or about September 26, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

70.     On October 14, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

71.     Hughes on the face of each of the Matured and Unpaid Invoices and based on the language contained therein executed, acknowledged, represented and confirmed to United Capital each of the following with respect to each Matured and Unpaid Invoices:

> All service that is being billed for is completed, correct and the amount due is approved for payment in full by 540 Brick City Brewing, LLC. I also confirm that there are no disputes, claims of offset or any other matters that reduce our obligation to pay the full amount of the invoice to United Capital Funding Group, LLC. Assigned and Payable to:

United Capital Funding Group LLC PO Box 31246
Tampa, FL 33631-3246

(the "**Brick City Agreement not to Assert Defenses**").

72.     An agreement between an account debtor and assignee not to assert defenses is enforceable under New Jersey common law. See *Hunts Point Co-op. Mkt., Inc. v. Madison Fin. LLC*, 421 F. App'x 153, 162 (3d Cir. 2009).

73.     In consideration for Brick City's execution of the Brick City Agreement not to Assert Defenses, United Capital provided factoring facilities to EG Munoz so as to enable EG Munoz to provide Construction Services to Brick City that materially benefited Brick City due to the benefit of EG Munoz's Construction Services for the Project.

74.     The Brick City Agreement not to Assert Defenses is contained on the face of each Matured and Unpaid Invoice, which reflects the sum certain amount Brick City agreed to pay directly to United Capital in order to satisfy the Matured and Unpaid Invoices.

75.     The Brick City Agreement not to Assert Defenses constitutes an enforceable agreement not to asset defenses against United Capital under New Jersey law.

76.     Brick City is and remains liable to United Capital for all sums due on the Matured and Unpaid Invoices.

77.     United Capital has suffered damages as a result of Brick City's breach of the Brick City Agreement not to Assert Defenses.

78.     Brick City owes United Capital the sum of not less than   $239,959.03 on the Matured and Unpaid Invoices, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plaintiff United Capital Funding, LLC demands judgment against Defendant Brick City Brewing, LLC in the amount of at least  $239,959.03, plus any other amounts

owing to EG Munoz, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

## COUNT IV
### Breach of Brick City's Agreement not to Assert
### Defenses Against United Capital Under UCC Section 9-403

As authorized by Fed. R. Civ. P. 8(d)(2), in the alternative, United Capital, as the assignee of the right to receive payment, sues Brick City under UCC Section 9-403[8] for Breach of the Brick City Agreement not to Assert Defenses, and as grounds therefore states as follows:

79.     United Capital realleges and readopts paragraphs 1 through 40 above as if fully realleged herein.

80.     On September 23, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

81.     On or about September 26, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

82.     On October 14, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

---

[8] N.J. Stat. Ann. § 12A:9-403(f) states "Except as otherwise provided in subsection (d), this section does not displace law other than this chapter which gives effect to an agreement by an account debtor not to assert a claim or defense against an assignee." (bolding added).

83.     Hughes on the face of each of the Matured and Unpaid Invoices and based on the language contained therein executed, acknowledged, represented and confirmed to United Capital each of the following with respect to each Matured and Unpaid Invoices:

> All service that is being billed for is completed, correct and the amount due is approved for payment in full by 540 Brick City Brewing, LLC. I also confirm that there are no disputes, claims of offset or any other matters that reduce our obligation to pay the full amount of the invoice to United Capital Funding Group, LLC. Assigned and Payable to:
>
> United Capital Funding Group LLC PO Box 31246
> Tampa, FL 33631-3246

(the "**Brick City Agreement not to Assert Defenses**").

84.     Pursuant to under UCC § 9-403, the Brick City Agreement not to Assert Defenses against United Capital, constitutes an enforceable agreement between United Capital, EG Munoz and Brick City, in which Brick City agreed not to assert claims and/or defenses against United Capital, as the assignee of the Matured and Unpaid Invoices, including any defenses that Brick City, as the account debtor may have against EG Munoz, the assignor.

85.     United Capital gave value to EG Munoz within the meaning of UCC Section 3-303, adopted in New Jersey as, 12A:3–303, in exchange for EG Munoz's assignment to United Capital of the right to receive payment due from Brick City under the Matured and Unpaid Invoices.

86.     United Capital, in good faith, as assignee was assigned the right to receive payment of the Matured and Unpaid Invoices from EG Munoz, as assignor.

87.     United Capital received the assignment without notice of a claim of a property or possessory right to the Matured and Unpaid Invoices and without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under UCC Section 3-305(a).

88.     Brick City is and remains liable to United Capital for all sums due on the Matured and Unpaid Invoices.

89.     United Capital has suffered damages as a result of Brick City's breach of the Brick City Agreement not to Assert Defenses.

90.     Brick City owes United Capital the sum of not less than $239,959.03 on the Matured and Unpaid Invoices, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plaintiff United Capital Funding Group, LLC demands judgment against Defendant Brick City Brewing, LLC in the amount of at least $239,959.03, plus any other amounts owing to EG Munoz, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

<u>COUNT V</u>
<u>Negligent Misrepresentation</u>

United Capital sues Brick City and Hughes, individually, jointly and severally, for Negligent Misrepresentation and, as grounds therefore states as follows:

91.     United Capital realleges and readopts paragraphs 1 through 21 and 29 through 36 above as if fully realleged herein.

92.     On September 23, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

93.     On or about September 26, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

94.     On October 14, 2020, Brick City received and approved the Matured and Unpaid

Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, via electronic

DocuSign signature of Brick City's Member, Stephen Hughes.

95.     Hughes on the face of each of the Matured and Unpaid Invoices and based on the

language contained therein executed, acknowledged, represented and confirmed to United Capital

each of the following with respect to each Matured and Unpaid Invoices:

> All service that is being billed for is completed, correct and the amount due is
> approved for payment in full by 540 Brick City Brewing, LLC. I also confirm that
> there are no disputes, claims of offset or any other matters that reduce our obligation
> to pay the full amount of the invoice to United Capital Funding Group, LLC.
> Assigned and Payable to:
>
> United Capital Funding Group LLC PO Box 31246
> Tampa, FL 33631-3246

(the "**Brick City Misrepresentations**").

96.     Hughes, on behalf of Brick City, with authority and/or as Brick City's authorized

representative or acting within the scope of his duties with Brick City, made the Brick City

Misrepresentations to United Capital.

97.     The Brick City Misrepresentations, specifically the statement made by Hughes

confirming "that there are no disputes, claims of offset or any other matters that reduce our

obligation to pay the full amount of the invoice to United Capital Funding Group, LLC," was

false due to any one or more of the following that existed at the time of the execution of the Brick

City Misrepresentations:

> a.   Certain disputes, claims of offset or other matters existed in respect to one, or
>
>      both, of the Matured and Unpaid Invoices, including, purported claims made by
>
>      sub-contractors arising from services provided to EG Munoz for the Project,
>
>      and in respect to which sub-contractors, and upon information and belief Brick

22

City remitted payment directly to such sub-contracts, instead of paying United Capital, and

b. Brick City has paid directly to EG Munoz all, or some portion of the sums due on the Matured and Unpaid Invoices, instead of paying United Capital.

98.     Article 9 of the Uniform Commercial Code, more specifically §9-406(a), as adopted in New Jersey as N.J.S.A. 12A:9-406, imposed a separate duty on Brick City, as the account debtor on accounts, to pay United Capital, the assignee, the amount due on the Matured Unpaid Invoices after Brick City received notice of the assignment in order to discharge the obligation due.

99.     United Capital has at no time been a party to the Brick City Agreement.

100.     Brick City's duty to pay United Capital the full amounts due under the Matured and Unpaid Invoices, without offset or reduction, is independent from the promises contained in the Brick City Agreement and/or the Construction Services EG Munoz was contracted to perform for the Project.

101.     United Capital justifiably relied on the Brick City Misrepresentations.

102.     United Capital was injured as a consequence of relying upon the Brick City Misrepresentations made by Brick City.

103.     United Capital has been damaged as a direct and proximate result of the Brick City Misrepresentations in the amount of at least $239,959.03.

**WHEREFORE,** Plaintiff United Capital Funding Group, LLC demands judgment against Defendants Brick City Brewing, LLC and Stephen Hughes, individually, jointly and severally, any actual pecuniary losses sustained as a direct result of the negligent misrepresentations in the amount of at least $239,959.03, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

## COUNT VI
## Common Law Fraud

United Capital sues Brick City and Hughes, individually, jointly and severally, for Common Law Fraud and, as grounds therefore states as follows:

104.    United Capital realleges and readopts paragraphs 1 through 21 and 29 through 36 above as if fully realleged herein.

105.    On September 23, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-004 in the amount of $105,865.83 dated September 14, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

106.    On or about September 26, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-005 in the amount of $78,256.75 dated September 26, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

107.    On October 14, 2020, Brick City received and approved the Matured and Unpaid Invoice numbered 19-0122-006 in the amount of $55,836.45 dated October 13, 2020, via electronic DocuSign signature of Brick City's Member, Stephen Hughes.

108.    Hughes on the face of each of the Matured and Unpaid Invoices and based on the language contained therein executed, acknowledged, represented and confirmed to United Capital each of the following with respect to each Matured and Unpaid Invoices:

> All service that is being billed for is completed, correct and the amount due is approved for payment in full by 540 Brick City Brewing, LLC. I also confirm that there are no disputes, claims of offset or any other matters that reduce our obligation to pay the full amount of the invoice to United Capital Funding Group, LLC. Assigned and Payable to:
>
> United Capital Funding Group LLC PO Box 31246
> Tampa, FL 33631-3246

(the "**Brick City Misrepresentations**").

24

109.    The Brick City Misrepresentations, specifically the statement confirming "that there are no disputes, claims of offset or any other matters that reduce our obligation to [sic] pay the full amount of the invoice to United Capital Funding Group, LLC," were   material misrepresentations of fact which was false due to any one or more of the following that existed at the time of the execution of the Brick City Misrepresentations:

      a.  Certain disputes, claims of offset or other matters existed in respect to one, or both, of the Matured and Unpaid Invoices, including, purported claims made by sub-contractors arising from services provided to EG Munoz for the Project, and in respect to which sub-contractors, and upon information and belief Brick City remitted payment directly to such sub-contracts, instead of paying United Capital, and

      b.  Brick City has paid directly to EG Munoz all, or some portion of the sums due on the Matured and Unpaid Invoices, instead of paying United Capital,  and

      a.  Brick City did not intend to remit payment to United Capital, in full  the amounts due on the Matured and Unpaid Invoices in accordance with the terms.

110.    Hughes, on behalf of Brick City, with authority and/or as Brick City's authorized representative or acting within the scope of his duties with Brick City, made the Brick City Misrepresentations to United Capital.

111.    Each of the Brick City Misrepresentations made by Hughes, on behalf of Brick City to United Capital, is independent and extraneous from Brick City's promises contained in the Brick City Agreement and/or the Construction Services EG Munoz was contracted to perform for the Project, due to Brick City having knowingly made the false Brick City Misrepresentations of fact

and/or having made such Brick City Misrepresentation with a reckless disregard of the truth when made.

112.    United Capital has at no time been a party to the Brick City Agreement.

113.    Brick City made the Brick City Representations with intent that United Capital would rely upon the Brick City Representations.

114.    United Capital reasonably and detrimentally relied on the Brick City Representations.

115.    United Capital has been damaged as a direct and proximate result of the Brick City Representations.

**WHEREFORE,** Plaintiff United Capital Funding Group, LLC demands judgment against Defendants Brick City Brewing, LLC and Stephen Hughes, individually, jointly and severally, any actual pecuniary losses sustained as a direct result of the fraud in the amount of at least $239,959.03, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

Dated: February 24, 2021.

Respectfully submitted,

CIARDI CIARDI & ASTIN
Attorneys for United Capital Funding Group, LLC
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550

BY: _____

        Albert A. Ciardi, III
        Email: aciardi@ciardilaw.com
        Daniel S. Siedman, Esq.
        Email: dsiedman@ciardilaw.com

and

ULLMAN & ULLMAN, P.A.
Crystal Corporate Center, Suite 100
2500 N. Military Trail
Telephone:  (561) 338-3535
MICHAEL W. ULLMAN
Email: michael.ullman@uulaw.net
JARED A. ULLMAN
Email: jared.ullman@uulaw.net
Pending admission Pro Hac Vice