**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED CAPITAL FUNDING GROUP, LLC, a wholly owned subsidiary of GULF COAST BANK & TRUST COMPANY, *Plaintiff*, v. BRICK CITY BREWING, LLC, STEPHEN HUGHES, individually, and EG MUNOZ CONSTRUCTION, LLC D/B/A EGM BUILDERS, LLC, a nominal party, *Defendants*. | Civil Action No. 21-3314 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this matter, Plaintiff United Capital Funding Group, LLC ("United Capital") alleges that Brick City Brewing, LLC ("Brick City") is liable for $239,959.03 in services performed by United Capital's assignor, EG Munoz Construction, LLC ("EG Munoz"). Plaintiff also asserts direct personal liability claims against Stephen Hughes, a member of Brick City. Presently before the Court is Hughes's motion to dismiss the Complaint ("Compl."). D.E. 12. Plaintiff opposed the motion, D.E. 19, and Defendant filed a reply, D.E. 21. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

---

[1] Defendant's brief in support of its motion to dismiss, D.E. 12-5 ("Br."); Plaintiff's opposition brief, D.E. 19-2 ("Opp."); and Defendant's reply brief, D.E. 21.

## I.    BACKGROUND[2]

Plaintiff United Capital is a limited liability company ("LLC") in the factoring business, in which United Capital purchases accounts from other businesses.  Compl. ¶ 13.  EG Munoz is a construction company that provides general contracting and subcontracting services.  *Id.* ¶ 16.  EG Munoz contracted with Defendant Brick City to provide construction services, supplies, and labor (the "Brick City Agreement").  *Id.* ¶ 17.  United Capital and EG Munoz entered into a written agreement (the "Factoring Agreement"), pursuant to which United Capital purchased accounts arising from construction services provided by EG Munoz to its customers, including Brick City. *Id.* ¶¶ 14-15.  Defendant Hughes is a member of Brick City who signed various invoices on behalf of Brick City.  *Id.* ¶¶ 92-94.

Plaintiff alleges that the Factoring Agreement "establishes United Capital's right to dominion and control over all payment made and/or proceeds received by EG Munoz" on any of the purchased accounts.  *Id.* ¶ 26.  Plaintiff further claims that in accordance with the Factoring Agreement, United Capital purchased three accounts totaling $239,959.03 which have matured and remain unpaid by Brick City, as documented by invoices issued to Brick City (the "Unpaid Invoices").  *Id.*  ¶ 32.  The Complaint states that the amounts due on the Unpaid Invoices "were assigned to United Capital, as the assignee of EG Munoz's right to receive payment for the [c]onstruction [s]ervices that EG Munoz provided to Brick City."  *Id.* ¶ 62.

According to Plaintiff, each invoice issued by EG Munoz to Brick City notified Brick City that the invoices were assigned and payable solely and exclusively to United Capital, and "Brick City could only discharge its obligation on the [Unpaid Invoices] by remitting the payment due to

---

[2] The factual background is taken from the Complaint.  D.E. 1.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

United Capital." *Id.* ¶¶ 33, 38.  Plaintiff continues that after Brick City received the Unpaid Invoices, Brick City paid EG Munoz rather than United Capital. *Id.* ¶ 39.  United Capital has since requested that Brick City remit payment for all sums due on the Unpaid Invoices, but Brick City has allegedly failed to pay. *Id.* ¶¶ 40-41.

Plaintiff filed its Complaint on February 24, 2021.  D.E. 1.  The Complaint contains two counts against Defendant Stephen Hughes for (1) negligent misrepresentation and (2) common law fraud. *Id.* ¶¶ 91-115.  Hughes responded with the current motion.  D.E. 12.

## II.    LEGAL STANDARD

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  A court "must accept all of the complaint's well-pleaded facts as true." *Id.* at 210.  However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a plausible claim. *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard.

Specifically, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R. Civ. P. 9(b).   A plaintiff must plead fraud with sufficient particularity such that he puts the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557.   "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## III.   ANALYSIS[3]

Hughes argues that Plaintiff's claims fail as a matter of law because a member of an LLC cannot be held personally liable for the obligations or debts of the LLC.   Br. at 7-11.   In support, Hughes cites to a New Jersey statute stating that the debts, obligations, or other liabilities of an LLC do not become those of a member "solely by reason of the member acting as a member or manager acting as a manager."   Br. at 6 (quoting N.J. Stat. Ann. § 42:2C–30).   Defendant states that Plaintiff's allegations reflect that Hughes took action "on behalf of Brick City, with authority and/or as Brick City's authorized representative or acting within the scope of his duties with Brick City," Compl. ¶¶ 96, 110, and argues that personal liability for such actions is prohibited by N.J. Stat. Ann. § 42:2C–30.   Br. at 6-10.   Plaintiff counters that the statute does not apply "to intentional

---

[3] The parties appear to assume that New Jersey law applies.   Seeing no clear reason to deviate from this assumption, the Court will apply New Jersey law.   *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

torts committed by a member."  Opp. at 14.  Plaintiff further contends that courts have regularly imposed liability on members of an LLC for "the member's own tortious conduct: either by construing the statutory word 'solely' to mean under circumstances where the member does not commit a personal wrong or otherwise assumes liability, or, under a piercing of the corporate veil basis."  *Id.* at 7.

The New Jersey Limited Liability Company Act states that "[t]he debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise…do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager."  N.J. Stat. Ann. § 42:2C–30. Courts have recognized that "the mere act of facilitating a contract on behalf of a principal's limited liability company does not create personal liability for the principal himself."  *U.S. Land Res., LP v. JDI Realty LLC*, Civ. No. 08-5162 (WHW), 2010 WL 3218417, at *5 (D.N.J. Aug. 12, 2010); *see also Torus U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC*, Civ. No. 14-1630 (KM), 2015 WL 6445788, at *4 (D.N.J. Oct. 22, 2015) (finding that an LLC's President and CEO signing the relevant contracts at issue because signing the contracts "without more, [did] not render him personally liable under the contract").

However, "[t]he limited liability protection provided by an LLC may be abrogated under the doctrine of piercing the corporate veil, which applies 'in cases of fraud, injustice, or the like.'" *Corp. Incentives, Inc. v. Unified Safe Guard, LLC*, Civ. No. 20-13471 (FLW), 2021 WL 2043092, at *2 (D.N.J. May 21, 2021), *reconsideration denied*, 2021 WL 2666667 (D.N.J. June 29, 2021) (quoting *State of N.J., Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983)).  The doctrine only applies in "extraordinary circumstances."  *AV Design Servs., LLC. v. Durant*, Civ. No. 19-8688 (RBK/KMW), 2021 WL 1186842, at *9 (D.N.J. Mar. 30, 2021).  The party seeking

to pierce the corporate veil bears the burden of proving that the court should disregard the corporate entity, *Corp. Incentives*, 2021 WL 2043092, at *2, and "requires a significant showing." *Torus U.S. Servs.*, 2015 WL 6445788, at *4.

Additionally, an LLC member can be held personally liable for a tort committed by the LLC "when he or she is sufficiently involved in the commission of the tort." *See Kenney v. M2 Worldwide, LLC*, Civ. No. 12-1059 (SRC), 2013 WL 3508564, at *1 (D.N.J. July 11, 2013) (quoting *Saltiel v. GSI Consultants, Inc*., 788 A.2d 268, 272 (N.J. 2002)). "If, however, the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable." *Saltiel*, 788 A.2d at 275-76. Thus, if Plaintiff's claims against Hughes sound in tort, then Hughes may be held personally liable if he was sufficiently involved in the commission of the alleged tort.

### A. Negligent Misrepresentation

The Complaint contains a count for negligent misrepresentation, alleging misrepresentations that Hughes made "on behalf of Brick City, with authority and/or as Brick City's authorized representative or acting within the scope of his duties with Brick City." Compl. ¶¶ 95-96. Specifically, United Capital claims that the statement contained in each of the Unpaid Invoices[4] that "there are no disputes, claims of offset or any other matters that reduce [Brick City's] obligation to pay the full amount of the invoice to United Capital" was false at the time Hughes executed the Unpaid Invoices on behalf of Brick City. *Id.* ¶ 97. Plaintiff also alleges that N.J.S.A. 12A:9-406 imposed a duty on Brick City, the account debtor, to pay United Capital, the assignee, the amounts due on the Unpaid Invoices. *Id.* ¶ 98. Plaintiff claims that "Brick City's duty to pay

---

[4] The "Unpaid Invoices" were actually paid (at least in part) to EG Munoz rather than Plaintiff. Compl. ¶ 97b. If not, Plaintiff's argument would not make sense because Hughes would not have been making any representations.

United Capital the full amounts due under the [Unpaid Invoices], without offset or reduction, is independent from the promises contained in the Brick City Agreement." *Id.* ¶ 100. United Capital further asserts that it relied on the above misrepresentation to its detriment and seeks to recover the $239,959.03 owed on the Unpaid Invoices. *Id.* ¶¶ 101-103.

By Plaintiff's own allegations, Hughes was acting on behalf of Brick City when he executed the Unpaid Invoices containing the alleged misrepresentations. *Id.* ¶ 96. Because Hughes was "acting as a member" of the LLC, N.J. Stat. Ann. § 42:2C–30, he is not subject to personal liability unless it is appropriate to pierce the corporate veil or apply the participation theory of liability. Plaintiff has not established that piercing the corporate veil is warranted. Plaintiff has not alleged any of the factors necessary for piercing the corporate veil, let alone made the significant showing necessary to justify taking such a measure. *See North American Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 F. App'x 176, 179 (3d Cir. 2013) (observing that to pierce the veil in New Jersey a plaintiff must demonstrate (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice") (internal quotations and citations omitted); *see also Torus*, 2015 WL 6445788, at *4 (declining to apply the doctrine because the plaintiffs "far from making [a significant] showing, ha[d] not even made any pertinent allegations" to support piercing the veil).

The Court next considers whether Hughes can be held personally liable under the participation theory of liability, which applies to torts claims but not breach of contract claims. *Saltiel*, 788 A.2d at 275-76. "Under New Jersey law, a dispute [that] clearly arises out of and relates to [a] contract and its breach sounds in contract and not in tort." *Stewart Title Guar. Co. v. Greenlands Realty*, L.L.C., 58 F. Supp. 2d 370, 386 (D.N.J. 1999) (internal quotation omitted)

(alterations in original).  Further, "under New Jersey law[,] a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care."  *Saltiel*, 788 A.2d at 278 (citing *International Minerals & Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587 (D.N.J.1990) and *Stewart Title Guaranty Co.*, 58 F. Supp. 2d at 373).

The New Jersey Supreme Court's ruling in *Saltiel* is instructive.  788 A.2d 268.  The *Saltiel* court considered whether corporate officers could be personally liable for their allegedly tortious conduct as to a contract between the plaintiff and the corporate defendant for the design and preparation of turfgrass.  *Id.* at 269.  The plaintiff alleged that the corporation and its officers negligently prepared the turfgrass, resulting in substantial financial loss, and sought to recover against the officers personally based on the participation theory of liability.  *Id.* at 269-70. Specifically, the plaintiff brought claims of negligent design and negligent misrepresentation against the corporate officers.  *Id.* at 279-80.  The court in *Saltiel* found that "[i]rrespective of the terminology used in the complaint," the case was essentially a breach of contract case, and that the "plaintiff, through her tort allegations, simply [was] seeking to enhance the benefit of the bargain she contracted for."  *Id.* at 280.  The court explained that "the scope of the parties' obligations was defined by the contract," and the contract imposed responsibilities on the corporation only, not on the corporate officers.  *Id.*  The *Saltiel* court continued that the plaintiff "was aware throughout the transaction that she was dealing with a corporate entity and that [the individual defendants] were acting on [the corporation's] behalf."  *Id.*  The plaintiff also alleged damages resulting from the alleged breach of contract, and the *Saltiel* court was "unable to discern any duty owed to the plaintiff that is independent of the duties that arose under the contract."  *Id.*  Thus, the New Jersey Supreme Court found that the individual defendants were not personally liable.  *Id.* at 281.

Here, Plaintiff's negligent misrepresentation claim against Hughes is in reality a breach of contract (or quasi-contract) claim relating to United Capital's right to receive payment as the assignee of the Brick City Agreement.  United Capital entered into the Factoring Agreement with EG Munoz, pursuant to which it allegedly acquired the rights to payment on the amounts owed by Brick City to EG Munoz as governed by the Brick City Agreement.  Compl. ¶¶ 14, 15, 32, 62.  Plaintiff's claim of negligent misrepresentation, though ostensibly a tort claim, seeks to recover the damages resulting from Brick City's alleged failure to pay the amounts due on the Unpaid Invoices.  *See id.* ¶ 103 (asserting damages equal to the total amount owed on the Unpaid Invoices).  As in *Saltiel*, "the scope of the parties' obligations was defined by the contract," and Plaintiff does not allege that there was an expectation that Hughes would be personally liable under the contract.  *Saltiel*, 788 A.2d at 280.  Further, United Capital "was aware throughout the transaction that [it] was dealing with a corporate entity and that [Hughes] [was] acting on [Brick City's] behalf," *id.*, as demonstrated by Plaintiff's own allegations.  Compl. ¶¶ 95-96.  Accordingly, "irrespective of the allegations in the complaint that sound in tort," the negligent misrepresentation count against Hughes sounds in contract "making the participation theory of individual liability inapplicable."  *Saltiel*, 788 A.2d at 281.

Moreover, Plaintiff fails to plausibly allege that Defendant owed Plaintiff a duty of care independent of a contract.  The Complaint alleges in a conclusory manner that Brick City had a duty to United Capital pursuant to N.J.S.A. 12A:9-406 independent from the Brick City Agreement,  Compl. ¶¶ 98, 100, but fails to explain how that provision imposes a duty separate from a contractual agreement between an account debtor and the assignee of the debtor's obligation.  And Plaintiff fails to allege that *Hughes* had an independent duty of care.  These allegations are insufficient to plausibly plead that either Brick City or Hughes owed an independent

9

duty of care to United Capital.  Thus, the negligent misrepresentation claim against Hughes is dismissed.[5]

### B.  Common Law Fraud

The Complaint also accuses Hughes of common law fraud predicated on the same alleged misrepresentations discussed above.  Compl. ¶¶ 104-115.  Plaintiff alleges that Hughes made these misrepresentations "on behalf of Brick City, with authority and/or as Brick City's authorized representative or acting within the scope of his duties with Brick City."  *Id*. ¶ 110.  Plaintiff further claims that Brick City made these misrepresentations "knowingly" or "with a reckless disregard of the truth," "with intent that United Capital would rely upon the [misrepresentations]," and that "United Capital reasonably and detrimentally relied on the [misrepresentations]" and was damaged as a result.  *Id.* ¶¶ 111-115.

"To establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).  Fraud must be pled with particularity pursuant to Rule 9(b).  *See Frederico*, 507 F.3d at 200.

Plaintiff has not pled fraud with sufficient particularity as required by Rule 9(b).  Plaintiff makes conclusory statements essentially amounting to listing the elements of a fraud claim but fails to provide any facts "inject[ing] precision or some measure of substantiation into [the] fraud allegation."  *Frederico*, 507 F.3d at 200.  For instance, Plaintiff alleges that Brick City made the

---

[5] Though the Court need not reach the issue of whether Hughes was "sufficiently involved" in the commission of the alleged negligent representation such that personal liability might attach, the Court is skeptical that the facts as pled support such a finding.

alleged misrepresentations to United Capital but does not provide any detail that would allow the Court to infer that Brick City indeed had knowledge that the statements at issue were false.  Compl. ¶ 111.  Similarly, the Complaint states that "Brick City made the [misrepresentations] with intent that United Capital would rely upon the [misrepresentations]" but contains no further allegations supporting Brick's City alleged intent.  *Id.* ¶ 113.  These "[t]hreadbare recitals of the elements of a cause of action" for fraud are insufficient to satisfy the pleading requirements of Rule 12(b)(6), much less Rule 9(b).  *Feingold*, 516 F. App'x at 226.  Allegedly paying the wrong party, without more, does not amount to fraud.

Moreover, though Plaintiff argues that personal liability can be imposed on a member of a LLC "for the member's *own* tortious conduct," Opp. at 7 (emphasis added), Plaintiff fails to plead that Hughes personally engaged in any fraudulent conduct.  Instead, the Complaint alleges that *Brick City* knowingly made misrepresentations to United Capital with the intent that United Capital would rely on those misrepresentations.  Compl. ¶ 111.  Nor does Plaintiff explain how Hughes may have been involved in the alleged fraud beyond executing the Unpaid Invoices containing the alleged misrepresentations "on behalf of Brick City, with authority and/or as Brick City's authorized representative or acting within the scope of his duties with Brick City."[6]  *Id.* ¶¶ 108, 110.  Plaintiff does not sufficiently allege common law fraud as to Hughes or that he was "sufficiently involved in the commission of the tort" such that personal liability could attach under the participation theory.  *Kenney*, 2013 WL 3508564, at *1.  Thus, the motion to dismiss Plaintiff's common law fraud claim against Defendant Hughes is granted.

---

[6] Given that Plaintiff's allegations as to Hughes's involvement are limited to stating his role in executing the Unpaid Invoices, the Court is skeptical that Plaintiff's fraud claims are anything more than breach of contract (or quasi-contract) claims masquerading as tort claims.  However, because the fraud claim against Hughes is dismissed on other grounds, the Court does not decide whether Plaintiff's common law fraud claim sounds in contract despite being pled as a tort.

## IV.     CONCLUSION

Defendant's motion to dismiss (D.E.12) is **GRANTED without prejudice**.  Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiff does not file an amended pleading within that time, this matter will be dismissed with prejudice as to Defendant Hughes.  An appropriate Order accompanies this Opinion.

Dated: November 4, 2021

John Michael Vazquez, U.S.D.J.